WATROBA v. CITY OF DETROIT.

1. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence of plaintiff, a 12-year-old boy who had just alighted from northbound streetcar, had let it pass and then proceeded westerly part way across tracks in center of 28-foot street on west side of which parking was not permitted *held*, question for jury, where evidence is in conflict as to just how the accident happened and as to where plaintiff was when he came into contact with defendant's southbound car.

2. SAME—SPEED—NEGLIGENCE—QUESTION FOR JURY.

Issue of negligence of defendant's southbound driver in street paved 28 feet between curbs and in the center of which was a single set of streetcar tracks was properly left to jury, where there is testimony that defendant's car was driven partially on such tracks and injured plaintiff, a 12-year-old boy, who had shortly theretofore alighted from a northbound streetcar and was proceeding westerly after it had passed on when hit by defendant's car being driven at speed variously estimated at from 25 to 40 miles an hour, since plaintiff was not bound to anticipate defendant's car would follow a course partly over the tracks or that it would approach at an excessive speed without keeping a reasonable and proper outlook.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Automobiles § 450.
[2, 3] 5 Am Jur, Automobiles § 215.
[4] 20 Am Jur, Evidence § 388 *et seq.*
[4] Admissibility of evidence, and propriety and effect of questions, statements, comments, et cetera, tending to show that defendant in personal injury or death action carries liability insurance. 4 ALR2d 761.

3. SAME—GREAT WEIGHT OF EVIDENCE—NEW TRIAL.

Verdict for 12-year-old boy against city for injuries he sustained when he came into contact with defendant's automobile *held;* not against the great weight of the evidence, hence denial of motion for new trial based in part on such claim was proper.

4. APPEAL AND ERROR—AUTOMOBILES—MISTRIAL—REFERENCE TO INSURANCE.

Reference by witness in trial of personal injury case that person in room of her injured son, the plaintiff, was "from an insurance" *held,* prejudicial but not reversible error, where remarks of court in presence of jury clearly indicate such remark was improper but court made no finding of bad faith on the part of counsel, and it does not appear that the matter of insurance was referred to in the instructions or that a request to instruct the jury was made; hence denial of motion for mistrial, instantly made, and later motion for new trial because of such occurrence, was proper.

Appeal from Wayne; Webster (Arthur), J. Submitted June 4, 1952. (Docket No. 28, Calendar No. 45,321.) Decided June 27, 1952.

Case by Ralph Watroba, a minor, by Vincent Watroba, his next friend, against City of Detroit for injuries sustained when struck by an automobile owned by defendant and driven by one of its employees. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Elmer H. Groefsema* and *Sidney K. Meyer* (*Cornelia Groefsema,* of counsel), for plaintiff.

*Paul T. Dwyer,* Corporation Counsel, and *James R. Walsh,* Assistant Corporation Counsel (*Markle & Markle,* of counsel), for defendant.

CARR, J. The accident out of which this case arose occurred on Junction avenue in the city of Detroit about 5 o'clock in the afternoon of June 4, 1948. The street in question is 28 feet in width from curb to curb. A streetcar track is located in the center, on which cars are operated only in a northerly direction.

Immediately prior to the accident plaintiff, then 12 years of age, alighted from a northbound streetcar on which he had been a passenger. He waited for the car to continue its course, and then started across the track in a westerly direction. He was at the time carrying a sack or bundle. It is his claim that he looked to the north, where his view was in part obstructed by the moving streetcar, and saw no traffic approaching. He then looked to the south, where he discovered an automobile some distance away. The proofs disclose that automobiles were permitted to park on the east side of Junction avenue, but not on the west, and that as a result northbound traffic frequently, and perhaps customarily, used a portion of the space between the rails of the streetcar track.

Plaintiff further claims that having made his observation for vehicles coming from the south he, while still standing in the center of the street and between the rails of the streetcar track, started to turn to the north to make an observation in that direction. At that instant a Ford 2-door automobile, owned by defendant and driven by one of its employees in a southerly direction, came in forcible contact with plaintiff, resulting in serious injuries to him. The present suit for damages was brought on the theory that the driver of defendant's car was guilty of negligence constituting the proximate cause of the accident.

At the conclusion of plaintiff's proofs on the trial, counsel for defendant moved for a directed verdict, claiming that plaintiff had failed to establish his freedom from contributory negligence. Said motion was taken under advisement under the provisions of the Empson act (CL 1948, § 691.691 *et seq.* [Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*]). It was renewed after the introduction of defendant's proofs. Decision was again reserved, and

the case was submitted to the jury which returned a verdict in plaintiff's favor in the sum of $15,000. Motions for judgment notwithstanding the verdict and for a new trial were denied, and defendant has appealed.

The principal question in the case has reference to the alleged contributory negligence on the part of plaintiff. Emphasis is placed on the fact that he apparently came in contact with the side of defendant's automobile rather than with the front. The testimony, however, is in conflict as to exactly how the accident happened and where the plaintiff was at the time of the impact. A police officer of the city of Detroit, who was called to the scene of the accident shortly after it occurred and examined the automobile, gave the jury the results of his observations. He stated in substance that there were scratches along the side of the car beginning at a point near the extreme rear skirt of the left front fender, then along the door and on to the rear of the car. The witness further testified that the handle of the door was bent out. It is not disputed that plaintiff's right arm was lacerated to such an extent that amputation subsequently became necessary. It is a fair conclusion that the handle of the door caught plaintiff's arm, with the result indicated.

The driver of defendant's car was called by plaintiff for cross-examination under the statute,* and testified that when he first saw plaintiff the latter was "within a step" of the car. He testified that he was driving between 25 and 30 miles per hour, but there is other testimony indicating a speed of 40 miles. The conclusion of the jury that he was guilty of negligence is not questioned, the claim being stressed, as before noted, that plaintiff was guilty of contributory negligence as a matter of law. The trial

---

* CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

judge in denying defendant's motion for judgment notwithstanding the verdict stated in substance that because of the conflicting proofs on the trial the issues of negligence were for the determination of the jury.

It is a fair conclusion from all the evidence in the case that the plaintiff was at the time of the accident a normal lad in all respects, and fully capable of exercising for his own safety the measure and degree of care that the ordinary boy of his age and his physical and mental development may reasonably be expected to exercise under circumstances of the character here involved. The following excerpt from his testimony fairly indicates his claim as to his position and conduct at the time he was struck by defendant's car:

"*Q.* Then at that time whereabouts were you with regard to the rails of that streetcar track?

"*A.* Just about midway of the rails.

"*Q.* Midway between the rails?

"*A.* Yes.

"*Q.* Then what did you do?

"*A.* I was standing there, I turned to look to my right.

"*Q.* You had been looking south.

"*A.* That is right.

"*Q.* You were standing there and then you did what?

"*A.* I turned to look to my right, to the north, then that is when I was hit.

"*Q.* You were at that time about where?

"*A.* Just between the rails.

"*Q.* Between the 2 rails?

"*A.* Yes, sir.

"*Q.* Approximately where with regard to the 2 rails?

"*A.* You mean how far in between them?

"*Q.* Yes.

"*A.* It must have been just, well, I think just about midway.

"*Q.* Just about midway?

"*A.* I couldn't give you the exact measurements.

"*Q.* At the time you were struck were you moving west or were you otherwise?

"*A.* I wasn't moving."

He testified further that he was not completely turned around at the instant of the impact, and that he did not see the defendant's car. The testimony of plaintiff to the effect that he. was between the rails of the streetcar track at the time the accident occurred was corroborated by a witness in his behalf, Lorene Kama, who stated positively that plaintiff was not across the west rail of the streetcar track. Defendant's driver stated that he stopped his car following the accident, went back to the place where it had occurred, and found plaintiff lying between the rails of the streetcar track in a position that the witness described as "the middle of the tracks."

While other testimony introduced on the trial was not in accord with the claim of the plaintiff, it was within the province of the jury to find that he was in the center of the street, between the rails of the streetcar track, and standing still, at the moment of the impact. If such was the situation, the inference clearly follows that defendant's driver, after meeting the streetcar from which plaintiff had alighted, veered to his left and operated his car in such manner that the left side of the vehicle extended across the west rail of the streetcar track. It may not be said as a matter of law that plaintiff was bound to anticipate that the driver of a southbound vehicle would follow such a course, or that he would approach at an excessive rate of speed without keeping a reasonable and proper outlook. *Carter* v. *C. F. Smith Co.,* 285 Mich 621; *Burnash* v. *Compton,* 298

Mich 70. The trial judge was not in error in denying the motion for judgment notwithstanding the verdict.

It is also claimed that the verdict was against the great weight of the evidence, and that for such reason the motion for a new trial should have been granted. We are not in accord with such contention. Under the testimony in the case the conclusion of the jury to the effect that plaintiff was exercising due and proper care for his own safety, in view of his age and of all other circumstances involved in the case, finds adequate support in the record. The disputed issues of fact relating to questions of negligence were properly submitted to the jury for determination, and the verdict reached should not be set aside for the reason claimed.

Appellant further insists that the trial court was in error in not granting a motion to declare a mistrial based on a claimed improper and prejudicial reference to the matter of insurance. For the purpose of impeaching the testimony of the plaintiff, defendant offered the testimony of a shorthand reporter as to questions propounded to plaintiff while he was in the hospital, apparently shortly following the amputation of his arm, and the answers thereto. Such questions were asked by a Mr. Lawrence, who was referred to by counsel for defendant in his cross-examination of the plaintiff as "an investigator." The reporter testified that the questioning was done in the presence of the parents of the plaintiff. Subsequently plaintiff's mother was called as a witness in his behalf and was questioned with reference to what occurred in connection with the interview by the investigator. After testimony to the effect that the witness undertook to enter plaintiff's room after his return from the operating room, and was requested to remain outside temporarily, the following occurred:

"*Q.* Who did you see?

"*A.* Then when I walked out there were 2 men standing there.

"*Q.* Who were they?

"*A.* I believe this man said he was from an insurance—

"*Mr. Markle* (interposing): Now, just a moment.

"*Q.* Who were —

"*Mr. Markle:* Just a minute. I would like to challenge counsel's good faith in that matter.

"*Mr. Groefsema:* I didn't expect that answer.

"*Mr. Markle:* I think it is a deliberate attempt— this is a suit against the city. They are afraid they are not going to recover against the city. They are trying to bring in something outside that has nothing to do with this case.

"*Mr. Groefsema:* There isn't any such purpose at all. I just wanted to know who the men were in the hall.

"*The Court:* Mr. Groefsema, you should warn your witness. You understand that very well.

"*Mr. Groefsema:* Pardon?

"*The Court:* It is your duty to warn the witness.

"*Mr. Groefsema:* I certainly—there is no reason for having any question like that in this lawsuit, your Honor. I openly admit there is no reason for it.

"*Mr. Markle:* There is no other reason for Mr. Groefsema to ask that question. He must know the answer. He isn't putting the witness on there without knowing what she is going to say. That is the mother of his client.

"*Mr. Groefsema:* I didn't know that answer. I don't practice law that way. Counsel can sustain me on that.

"*Mr. Markle:* I would like the court to instruct this jury on that, or, if not, to declare a mistrial.

"*The Court:* Well, counsel here on both sides are trial lawyers of long experience and they understand that any reference to any outside thing of that kind is improper in the trial of a case.

"Now, if by one method or another it is brought in, it becomes a question of good faith and whether or not a mistrial should not be declared on that account. I don't like, under the circumstances, to say that this was anything that resembled bad faith but certainly you should have been careful in instructing your witness with reference to things of that kind which you know are apt to come out in the trial of a case.

"*Mr. Groefsema:* I appreciate that, your Honor.

"*The Court:* This idea of bringing it in at the last moment is prejudicial undoubtedly, but I think under the circumstances we will proceed with the trial of the case.

"*Mr. Markle:* I move for a mistrial. I take it then the motion for mistrial is denied?

"*The Court:* Denied."

The charge of the trial court submitting the case to the jury is not contained in the record before us. In consequence we do not know whether the matter of insurance was referred to therein. Neither does it appear that any request for an instruction on the matter was presented by counsel for defendant. It is apparent that the trial judge, who had the advantage of observing the witness at the time the statement was made, did not believe that a finding of "bad faith" was justified. We think it may be said also that the statements of the court, together with the remarks of counsel, were of such nature as to reasonably inform the jury that any reference to the matter of insurance was highly improper and as such not entitled to consideration in the determination of the case.

In *Morris* v. *Montgomery,* 229 Mich 509, the reference in the plaintiff's testimony to the matter of insurance was, on motion, stricken out by express direction of the trial court. In discussing the question whether such reference constituted reversible error, it was said:

"Plaintiff testified to a conversation with defendant at a hospital and stated an insurance adjuster was present. The testimony about an insurance adjuster was struck out. This cured the error. The time has come when probably a majority of persons on every jury own automobiles and the policy of carrying insurance is so common that it is not surprising if jurors sense the fact. The rule of exclusion, perhaps, ought to continue, even though everyday affairs have moved beyond its original reason, but it ought not to be employed to set aside judgments except in cases of flagrant violation."

In *White* v. *Makela*, 304 Mich 425, 436, the position that this Court has taken in prior decisions with reference to the matter of insurance was summarized as follows:

"We have had occasions to discuss the question here raised, and our conclusions have quite uniformly been that the mere fact that the defendant has insurance has reached the ears of the jurors during the trial does not constitute reversible error, unless an improper use of it is made by counsel for the evident purpose of inflaming the passions of the jury and thereby affecting the result or increasing the size of the verdict, or unless such testimony was designedly injected into the case for such purpose or purposes. See *Sutzer* v. *Allen*, 236 Mich 1; *Nicholas* v. *Maxwell Motor Corp.*, 237 Mich 612; *Morris* v. *Montgomery*, 229 Mich 509; *Nicewander* v. *Diamond*, 302 Mich 239. In the instant case, the issue of defendants' liability was not involved, and the record of the trial and proceedings is barren of prejudicial error."

Under the circumstances here involved, we think that the trial court was not in error in denying the motion to declare a mistrial, or in subsequently denying a motion for a new trial based in part on such alleged error. The record does not justify a conclusion that the matter of insurance was deliber-

ately injected into the case by counsel for the plaintiff. The statements of the trial judge as set forth in the excerpt from the record, above quoted, could scarcely have failed to indicate to the jury that whether defendant carried insurance against public liability resulting from the operation of its automobiles was not involved in the case, and that in consequence the use of the term by the witness should be disregarded.

We find no reversible error in the case, and the judgment is affirmed, with costs to plaintiff.

DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

NORTH, C. J., did not sit.