HATTEN *v.* BANE

1. TRIAL—ARGUMENTS TO JURY—OBJECTION—WAIVER.
    Counsel for the other side should call the attention of the court to any improper statements made by counsel during argument to the jury, and unless they do so, they waive their right to objection unless the statement is so extremely prejudicial that even a correction by the court would *not* undo the harm.

2. TRIAL—ARGUMENT TO JURY—NEW TRIAL.
    Denial by trial court of a motion for a new trial by plaintiffs in an automobile negligence action after defense counsel in his final argument personally involved the jurors by stating that plaintiff had already been at least partially compensated for her injuries by drawing pay while on medical leave from her work, and this compensation was actually paid for by them, the members of the jury, in the form of higher consumer prices *held*, reversible error, because it would be impossible for a remedial instruction to cure the deliberately prejudicial effect of this argument.

Appeal from Macomb, James E. Spier, J. Submitted Division 2 October 9, 1968, at Detroit. (Docket No. 4,054.) Decided February 24, 1969. Leave to appeal denied May 14, 1969. See 382 Mich 753.

Complaint by Ernest Hatten and Bertha Hatten against Michael D. Bane for injuries suffered in an automobile accident. Verdict and judgment for defendant. Plaintiffs appeal. Reversed and remanded.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial §§ 505, 506,

*Calvin M. Gonek,* for plaintiffs.

*John R. Secrest,* for defendant.

BEFORE: J. H. GILLIS, P. J., and R. B. BURNS and KELLEY,* JJ.

KELLEY, J. This action resulted after defendant's vehicle struck the rear of plaintiffs' vehicle, operated by plaintiff Bertha Hatten. Defendant admitted negligence, leaving damages as the only question for jury determination. Following an adverse verdict and denial of their motion for a new trial, plaintiffs appealed.

Plaintiffs raise several questions, of which only those pertaining to defense counsel's argument to the jury merit consideration. Included in this argument was the following:

"I say to you the real issue, the only thing of importance is not how much you are going to give these folks, it's a question I believe, a question of present-day morality and what is right and what is wrong. Those are the real questions, not how much you are going to give.   *   *   *

"What is the consequence of that? I'm saying it's a question of right and wrong and I'll tell you why. Is it fair to the other employees over there not taking the time off who are not getting their fifty bucks a week? Is it fair to the employer who gets canceled out of these insurance policies? Is it fair to the employees who are paying the premiums on these insurance policies at the plant where the lady is taking off? And finally, is it fair to the consumer who in the end must pay? Is it fair to all of us? That's why I say what is the problem in this law suit? It's a question of moral standards, it's a question of morality.   *   *   *

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

"He said the judge will charge you to disregard these payments. And the judge will charge you that the defendant cannot be credited with these, but as jurors you are entitled to take every fact that comes from that witness stand and put it in your mind and weigh it with your good common sense what the real facts here are.

"And, ladies and gentlemen of the jury, I say to you that in this business that I'm in and Mr. Gonek is in, there are actual terms, there are slang terms as to what happened here. I'll tell you what one slang term is. Some of you folks already know it, it's called, 'riding the medical pay'. What happens is this. A person receives, as she has here, medical pay, they get X number of dollars for being off of work. Now you figure what that comes out to. According to the employer and to the records she was getting $88 a week. She was getting $50 a week medical pay income-tax-free. You figure out what the two balance out to, her pay opposed to what she may have paid in income tax. There is not much difference in the two.   *   *   *

"Ladies and gentlemen, Mr. Gonek has said to you that if you believe she was injured you have to give her her time off from work, that you have to give her certain medical bills. Ladies and gentlemen, you don't have to do nothing [sic]. You are a jury and in this state a jury is all-powerful and a jury will use their good common sense in their deliberations and in their deliberations will come to an exact amount which it feels is right and proper. You are not bound to do anything anyone asks or tells you you are bound to do, you are only bound to follow the law and arrive at a right and fair verdict."

Plaintiffs' counsel neither objected to these statements when made, nor requested the court to give a corrective instruction. However, the court did give such an instruction, and further instructed the jury to bring in a verdict for plaintiffs, stating that the only question was the amount of damages:

"In this case the defendant has admitted that he was driving negligently and that this accident did result from his negligence. It is his claim that, however, that the complaints of the plaintiff for injury are exaggerated and that only a reasonable compensation should be allowed.

"That is leaving the question to the jury as to what is reasonable compensation. Your province in here is to determine the amount of damages to be awarded to these two plaintiffs.

"There will be a recovery—there will be a verdict for both of these, each of these plaintiffs. There will be two verdicts; one for each. One for Bertha Hatten, the injured party; and the other for Ernest Hatten, who financially and otherwise suffered damages. * * *

"The plaintiff, Bertha Hatten, in this case, you would fix some sum of money that would include all these items: First, she is claiming between $2,100 and $2,200 in lost wages. So, as much of those wages as you are satisfied by a preponderance of the evidence were lost as a result of this particular collision you would award. You would disregard any compensation which she has received by way of employers insurance, insurance of any kind."

The jury returned a verdict in a form nowhere mentioned in the instructions, and contrary to them: "no cause for action."

Defendant claims that plaintiffs' failure to object so that the statement could have been corrected by the trial judge or the jury instructed to disregard it, precludes plaintiffs' later objection. In *Taliaferro* v. *Pere Marquette R. Co.* (1930), 249 Mich 281, 287, the Court recognized that not all such situations may be so corrected:

"It has been repeatedly held that, if counsel in their argument make improper statements, the attention of the court should be called to it by counsel

on the other side. If they do not do so, they waive their right to objection, *unless the statement is so extremely prejudicial that even a correction by the court would not undo the harm.*" (Emphasis supplied.)

Here the true question is whether defense counsel's wilful action prevented plaintiffs from obtaining a fair, impartial trial. Repeatedly using a totally irrelevant topic, counsel intentionally[1] aimed his thrust at the jurors' personal economic involvement[2] for the sole purpose of prejudicing them. The effect of this calculated effort appears in the verdict, rendered in form and substance contrary to instructions. The highest Court in this State has ruled on such activity:

"The record in the instant case shows a deliberate course of conduct on the part of counsel * * * aimed at preventing * * * a fair and impartial trial * * * so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless. *. * * The argument as made so inflamed the minds of the jury * * * that a charge to disregard it would have been useless * * * and, therefore, it was unnecessary * * * to request such a charge." *Steudle* v. *Yellow & Checker Cab & Transfer Co.* (1938), 287 Mich 1, 11, 12, 13.

---

[1] In *Kujawski* v. *Boyne Mountain Lodge, Inc.* (1967), 379 Mich 381, cited by defendant for the proposition that plaintiffs' failure to object or to request corrective instructions forestalled later objection to the statements, counsel in argument stated simply but erroneously that a person had an income of $11,000 per year. Opposing counsel then told the jurors that he would leave it up to them whether a witness had testified to such an amount. The Court (p 386) concluded that nothing indicated an intentional misstatement.

[2] As previously noted, defense counsel said, in speaking about nonrelevant premiums for insurance policies and retail prices of products: "And finally, is it fair to the consumer who in the end must pay? Is it fair to all of us?" Arguments personally involving jurors have been condemned. See cases cited in 17 Callaghan's Michigan Digest, Trial, § 135.

"An instruction to ignore the statement could not have erased it from the jurors' minds. To make plaintiff's rights dependent upon the results of speculation as to whether it affected their judgment and decision is not compatible with the concept of a fair trial, to which every party is entitled." *Clark v. Grand Trunk Western R. Co.* (1962), 367 Mich 396, 402.

The record shows that the circuit judge adeptly conducted this problem-laden trial. However, plaintiffs' motion for a new trial should have been granted.

Reversed and remanded for a new trial. Costs to appellants.

All concurred.