GAGE v FORD MOTOR COMPANY

Docket No. 45922. Submitted June 19, 1980, at Detroit.—Decided December 3, 1980. Leave to appeal applied for.

William Gage, administrator of the estate of Frederick W. L. Denlar, brought an action against Ford Motor Company and Buffalo Scale Company in the Wayne Circuit Court alleging negligence and product liability in the death of plaintiff's decedent in a fall from a scale. Buffalo Scale Company was dismissed and Great American Insurance Company was added as a party plaintiff. Interrogatories propounded by plaintiffs and answered by Ford Motor Company in which Ford admitted ownership of the scale were read to the jury. The court, Joseph B. Sullivan, J., granted judgment on a jury verdict for plaintiffs. Defendant appeals. *Held:*

1. Defendant alleges error in the trial court's denial of a motion for a directed verdict at the close of plaintiffs' proofs and a motion for a judgment notwithstanding the verdict. The standard of review of both issues is the same: whether, giving the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence, reasonable minds could disagree as to whether the plaintiff has satisfied his burden of proof on each element of his cause of action. The trial court did not err in denying the motions.

2. Defendant claimed in the lower court and in the Court of Appeals that it did not own the scales and had been confused about the point when answering the interrogatories. However, it failed to move to strike the answer in the lower court or to file supplemental answers to interrogatories. Thus, there was conflicting evidence as to the ownership of the scale.

3. Other claims of error were not properly preserved for appeal by objections.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 608, 886.

46 Am Jur 2d, Judgments § 117.

[2] 57 Am Jur 2d, Negligence § 38.

62 Am Jur 2d, Premises Liability § 62 *et seq.*

[3] 5 Am Jur 2d, Appeal and Error § 553

1. APPEAL — MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — DIRECTED VERDICT..

The Court of Appeals, when reviewing the grant of a motion for a judgment notwithstanding the verdict, must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence; the grant of a defendant's motion for a judgment notwithstanding the verdict is improper if reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof on the necessary elements of his cause of action; the same standard of reveiw applies to motions for directed verdicts.

2. NEGLIGENCE — DUTY OF CARE — INVITEES.

The owner of a premises has a duty to exercise reasonable care not to injure an invitee and to warn him of latent dangers of which the owner knows or reasonably should know.

3. APPEAL — PRESERVING QUESTION.

Failure to object to jury instructions or remarks of counsel fails to preserve the issues for review.

*Sommers, Schwartz, Silver & Schwartz, P.C.,* for plaintiffs.

*John A. Kruse* and *Michael F. Schmidt,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

PER CURIAM. In August, 1974, William Gage (plaintiff), as administrator of the estate of Frederick Denlar, filed. suit against Ford Motor Company (Ford) and Buffalo Scale Company (Buffalo), in Wayne County Circuit Court. The complaint alleged that in February, 1969, plaintiff's decedent was fatally injured while working on Ford property and while standing on a scale manufactured and installed by Buffalo. Plaintiff alleged negligence and product liability. The cause was dismissed as to Buffalo, pursuant to stipulation by

* Circuit judge, sitting on the Court of Appeals by assignment.

the parties, on February 1, 1978. Great American Insurance Company was added as a party plaintiff on February 6, 1978.

The case was tried before a jury and, at the close of all the proofs, defendant moved for a directed verdict of no cause of action. The lower court denied the motion for directed verdict.

On March 13, 1979, the jury returned a verdict in favor of plaintiff in the amount of one and a half million dollars. An order denying defendant's motion for a judgment *non obstante veredicto* and for a new trial was entered on June 12, 1979.

Before the accident, plaintiff's decedent was a truck driver for the Edward Levy Company (Levy). Levy and Ford entered into a contract whereby Levy would remove steel wastes (slag) from a Ford steel plant. Levy sold the slag material, after processing it, for some productive purpose. Ford charged Levy for the slag on a quantity basis. Levy was required to build the necessary facilities for processing the slag and conveying it across the Rouge River to levy's own plant. Levy was allowed to build the facilities on Ford property.

Levy trucks would enter the Ford plant, load the slag into the trucks and then leave through gate 12. On the other side of the gate, the truck would drive onto a scale for weighing the slag. The truck driver would punch a ticket which would indicate the weight of the slag. The material would then be dumped into a crusher and processer. Some of the material would be returned to Ford and the rest was conveyed across the river to the Levy plant.

At trial, Mr. Fisher testified that he was employed by Levy and was working at the Ford steel mill loading slag on the date of the accident. He stated that only Levy employees conducted this operation. At the end of the day and after loading

the last load of slag onto decedent's truck, Mr. Fisher rode out of the Ford plant with him. Decedent's truck was a 30-ton capacity dump truck.

After decedent drove the truck onto the scale, there was only about a foot and a half on each side of the scale. The scale was eight to ten feet above ground. There was no guardrail on the side of the scale. Steel cables were strung perpendicular to the scale, but they were always loose, according to the witness. Decedent got out of the truck in order to go to the ticket punching machine. Mr. Fisher also jumped out of the truck on the passenger side, a moment or two later than the decedent. As Mr. Fisher was exiting from the truck, he heard the decedent cry for help. He went around the truck and looked over the side of the scale. He observed the decedent lying on the ground, motionless. The decedent told Mr. Fisher that he got caught in the cables and fell.

Mr. Fisher sent for an ambulance. The decedent was taken to the hospital where it was determined that he was paralyzed from the neck down. Decedent died within two years of the accident, as the result of complications from the injury.

Interrogatories were then read into evidence. The defendant admitted ownership of the scale but stated that it was unknown who designed or installed it. There appeared to be some confusion concerning to which scale the interrogatories were referring. Levy had another operation in the same plant and a different gate, gate 6. Ford told the judge that it was confused by the interrogatories and thought that they were referring to the scale at gate 6, since the questions talked about plant 6. The judge told Ford that it would have a chance to enter any other interrogatories or evidence to clear up any confusion.

Decedent's widow testified that in their ten years of marriage they had four children. The decedent was a healthy, active person prior to the accident. Two weeks prior to the accident, she had started working outside the home for the first time since their marriage.

After the accident, her husband spent the next nine months in the hospital. He was paralyzed from the neck down. He was in a lot of pain and was very depressed. She wanted to care for him, so he went home when the doctor stated that they could no longer help him at the hospital. He died after being home for 11 months without any recovery from the paralysis.

Hospital records and wage earning records were entered into evidence. The contract between Levy and the defendant was entered into evidence and a copy was given to each juror to read.

Dr. Greenslit testified as follows: The decedent's fourth and fifth vertebrae were crushed, thereby paralyzing him. His breathing and bowel and bladder functions were impaired. He developed pneumonia at one time during his stay at home from the breathing impairment. The decedent was in a great deal of pain in his shoulder, upper arm and neck areas because these areas still had a little nerve supply. The chances of death in a parapalegic with impaired bodily functions, such as the decedent, is very great. Death usually occurs within six months of the injury. The decedent died of chronic pyelonephritis uremia, which is a poisoning of the body resulting from kidney and bladder infection. This was a result of the initial injury.

The defendant called Mr. Doroshewitz to testify. He testified as follows: He is a Ford industrial engineer in the steel division. Ford and Levy

entered into the contract concerning the gate 12 operations in 1962. Levy built the slag crushers, conveyers and other facilities on Ford property, pursuant to the contract, in 1963. No Ford employees were involved. Ford did not have the scale at gate 12 listed on its property list so he assumed it was not owned by Ford but by Levy. The only trucks using the scale at gate 12 were Levy trucks, to the best of his knowledge. No Ford trucks used the scale. Ford did not do any maintenance or have anything to do with the scale, with two exceptions. They checked the accuracy of the scale occasionally. Also, Ford complained to Levy of the slag flying off the trucks and onto Ford employees' cars.

Mr. Levy testified as follows: He is the president of the Edward C. Levy Company. He negotiated the 1962 contract. Levy built the facilities on the Ford premises at gate 12. Levy owns the scale from which the plaintiff fell. It was purchased by Levy for use at the Ford operations. The scale is 13 feet wide. Only Levy people were involved in installing it. No Ford people were involved except to show Levy where water mains were so they would not hit them, and other similar types of warnings. If maintenance was needed on the Levy scale, Levy people would do it.

On cross-examination, it was pointed out that Levy does substantial business with Ford through several Levy subsidiaries.

This matter was scheduled to be argued in the Court of Appeals during the June, 1980, case call and was heard on June 19, 1980. Defendant filed a motion on June 10, 1980, and noticed said motion for hearing on June 17, 1980. The motion was entitled: "Motion of defendant-appellant Ford Motor Company to amend or strike answers to inter-

rogatories". By order of this Court the hearing on the motion took place on the call of this appeal on June 19, 1980. The motion was denied on June 24, 1980, and a motion for rehearing was also denied July 16, 1980.

Defendant argued in support of its motion to amend or strike answers to interrogatories that the suit herein was brought some five years after the accident, thereby causing Ford difficulty in investigation, which difficulty was compounded by plaintiff's alleged incorrect description of the accident site. The answers to plaintiff's interrogatories of October 14, 1975, were read to the jury by plaintiff's attorney over defendant's objection. Ford contended that the incorrect interrogatory answer indicated that, on information and belief, the scale was owned by Ford, but used, controlled, and maintained by Levy Company. Ford contends that the statement of facts in its brief on appeal is conclusive on the issue of ownership, control and maintenance of the scale, as it recites undisputed testimony from trial to the effect that Edward C. Levy Company, and not Ford, purchased, installed, constructed, maintained, repaired, owned and controlled the scale. Relying on GCR 1963, 820.1, Ford requested that this Court enter an order striking the incorrect answers made to the plaintiff's supplemental interrogatories, or allow the damaging answer to be amended, or allow further evidence to be submitted to show that the answer was incorrectly given.

Plaintiff correctly indicates that the motion before this Court was noticed to be heard two days before the scheduled oral argument of this appeal. At no time prior to trial did defendant attempt to amend or to explain these answers. At trial, defendant did not call D. R. Jolliffe, who answered the

interrogatories, to explain his answers. During the first day of trial, defense counsel represented that the answers were in error. The trial court allowed the answers to be read to the jury and the defense was given an opportunity to offer contrary evidence.

At the close of proofs, defendant moved for a directed verdict of no cause of action on the ground that Ford and Levy had a lessor-lessee relationship, thereby absolving Ford of any liability in this matter. The lower court heard argument, considered the briefs, and concluded that the contract was not a lease but a license or permit. Defendant's motion was denied. The lower court also denied Ford's motion for a judgment notwithstanding the verdict, which was premised on the same argument.

When reviewing the lower court's denial of a motion for a judgment *non obstante veredicto,* this Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. Where reasonable men could differ as to whether the plaintiff has satisfied his burden of proof on the necessary elements of the cause of action, the lower court properly denied the motion. *Cormack v American Underwriters Corp,* 94 Mich App 379, 382; 288 NW2d 634 (1979). This is the same standard of review for motions for directed verdicts. *Kucken v Hygrade Food Products Corp,* 51 Mich App 471; 215 NW2d 772 (1974).

In the case at bar, the lower court properly considered the terms of the contract in determining that the parties did not intend to create a leasehold by the agreement. *McCastle v Scanlon,* 337 Mich 122; 59 NW2d 114 (1953).

Based upon a thorough reading of the contract,

it is evident that Levy's use of the Ford property was dependent upon the continuance of the slag operation and that Levy could use the property only for that purpose. Consideration was measured on a per pound basis, rather than a monthly or annual lease. Ford was still permitted to enter the land and to give Levy instruction on how to keep it safe. The parties themselves called it a "land use permit", rather than a lease. The permit was revocable within 90 days, at will. Therefore, we find that the lower court did not err in holding that it was a license or permit, rather than a lease.

Defendant argues that even if the contract did create a permit rather than a lease, the defendant was not liable for the faulty scale, which was owned and installed by Levy. Since this issue was not raised in the lower court, it is not properly before this Court for review.

At any rate, we find that the issue is without merit. Case law on the duty of the invitor to the invitee must be examined. Decedent, being on defendant's premises for a purpose beneficial to both parties, was an invitee. *Kucken, supra, Dobbek v Herman Gundlach, Inc,* 13 Mich App 549; 164 NW2d 685 (1968), *lv den* 381 Mich 804, 806 (1969). In such cases, the invitor has a duty to exercise reasonable care not to injure him and to warn him of latent dangers of which defendant knew or reasonably should have known. *Kucken, supra, Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965).

The evidence was uncontradicted that Ford owned the property where the plaintiff was injured. The evidence as to who owned and maintained the scale was conflicting. Ford's own answer to plaintiff's interrogatory admitted ownership of

the scale. Ford told the judge that it was confused when the interrogatories were answered because it thought the question was referring to another scale. The judge properly told Ford that it could present supplemental interrogatories and other evidence, if desired, in order to refute its answer but ruled that the answers to said interrogatories were admissible. Ford introduced the testimony of Mr. Levy, who stated that he owned, installed and maintained the scale. A Ford employee stated that Ford did not own the scale. There being evidence upon which reasonable men could differ as to the ownership of the scale, the lower court properly allowed the question to go to the jury.

Ford raises several objections to the jury instructions. Since defendant failed to object to the instructions, this issue was not properly preserved for review. *Tiffany v The Christman Co,* 93 Mich App 267; 287 NW2d 199 (1979), GCR 1963, 516.2. At any rate, we hold that, reviewing the instructions as a whole, the theories of the parties and the applicable law were fairly and adequately presented to the jury. *Berline v Snyder,* 89 Mich App 38; 279 NW2d 322 (1979), *lv den* 407 Mich 867 (1979), *Dowell v General Telephone Co of Michigan,* 85 Mich App 84; 270 NW2d 711 (1978), *lv den* 405 Mich 803 (1979).

Ford further alleges that various remarks made by opposing counsel denied it a fair trial. With one exception, Ford failed to object to the remarks thus waiving review of this issue. *Hatten v Bane,* 16 Mich App 10; 167 NW2d 466 (1969), *lv den* 382 Mich 753 (1969). Reading the entire transcript, it cannot be said that Ford was denied a fair trial. *Wayne County Board of Comm'rs v GLS LeasCo,* 394 Mich 126; 229 NW2d 797 (1975).

If we could assume that the answer to the

interrogatory in question was in fact erroneous, submission of such an answer to the jury for its consideration, and a determination by the jury in favor of the plaintiff based on the answer to the interrogatory, would in effect defeat the truth-seeking process in this case. We cannot so assume based on what was submitted for our consideration.

There was an absence of any motion to strike or amend the answers to interrogatories in the court below. Other than argument of defense counsel, the record is devoid of any explanation by D. R. Jolliffe, who answered the interrogatory, as to why he answered as he did. If there was confusion or mistake, defendant had a chance to rebut the answer and to offer contrary testimony. As the record stood, ownership of the scale was a question of fact. The instructions given by the court to the jury left it to the jury to decide who owned the scale. Defendant did not object to the jury instructions. Following the entry of a judgment on the verdict, the defendant filed a motion for a judgment notwithstanding the verdict or for a new trial. The reasons recited in support of the motion did not raise any claimed error regarding the submission to the jury of the answer to the interrogatory alleged to have been erroneously made by an authorized agent of the defendant.

Argument of counsel on appeal of this matter was heard on June 19, 1980. On June 10, 1980, defendant had filed a motion pursuant to GCR 1963, 820.1(1), (4), (5), and (7) asking this Court to enter an order allowing it to file supplemental corrected answers to plaintiff's interrogatories, or strike the incorrect interrogatory answer previously filed, and if necessary, continue the cause

until further evidence could be taken, if the court should deem it necessary in order to do justice. Based on what was submitted for our consideration, a determination was made to deny the motion and an order was entered accordingly. This disposed of this matter insofar as this Court is concerned.

Affirmed with costs to plaintiff.