## CRENSHAW v GOZA

### 1. TRIAL—NEW TRIAL—INTERROGATORIES.

A new trial may be granted for misconduct, misrepresentation, or fraud by the prevailing party, but such grounds did not exist where the plaintiff did not list certain diagnoses of her health problems for a particular period in answering defendants' interrogatories but where defendant had medical authorizations to examine plaintiff's hospital and doctor records, did not move for more certain answers to the interrogatories, did not take plaintiff's deposition, did not move for a continuance based on being prejudiced or unfairly surprised at trial, cross-examined plaintiff's doctor in detail about her medical history, and commented on plaintiff's failure to tell the "complete truth" in his closing argument (GCR 1963, 527.1[2], [9], 309).

### 2. TRIAL—MISTRIAL—REFERENCE TO INSURANCE.

A mistrial is not required where a reference by plaintiff to the carrying of insurance applied to an earlier accident to plaintiff not involving the defendant, and was only incidentally brought into the trial on cross-examination and not referred to again, the reference not being designed to inject the question of insurance into the case (MCLA 500.3030).

### 3. TRIAL—CLOSING ARGUMENT—OBJECTIONS—INSTRUCTIONS TO JURY.

A request for curative instructions or an objection to the instructions is necessary to preserve the issue of the propriety of closing argument for appellate review or as grounds for a new trial.

### 4. NEW TRIAL—GROUNDS—EXCESSIVE VERDICT.

A verdict that was within the scope of the testimony, does not appear to be the result of prejudice, and is not shocking to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur 2d, New Trial § 29 *et seq.*
[2] 53 Am Jur, Trial § 967.
[3] 58 Am Jur 2d, New Trial § 128.
[4] 58 Am Jur 2d, New Trial § 129.
[5] 57 Am Jur 2d, Negligence § 7.

judicial conscience is not grossly excessive and grounds for a new trial (GCR 1963, 527.1[4]).

5. Negligence—Directed Verdict—Evidence.

A motion for directed verdict for the plaintiff was properly granted on the issue of liability where the defendant introduced no evidence that he was not negligent but relied solely on cross-examination of plaintiff's witnesses, notwithstanding the fact that the evidence is to be construed in the light most favorable to the party opposing the motion.

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 1 June 8, 1972, at Detroit. (Docket No. 12763.) Decided October 25, 1972. Leave to appeal denied, 389 Mich 782.

Complaint by Bettie Lue Crenshaw against Harry Goza for negligence in an automobile accident. Judgment for plaintiff. Defendant appeals. Affirmed.

*Blum, Graber, Meklir, Pianin & Rosenberg, P. C.,* for plaintiff.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr, P. C.* (by *William J. Heaphy),* for defendant.

Before: J. H. Gillis, P. J., and McGregor and Borradaile,* JJ.

Borradaile, J. This is an automobile negligence case arising out of an accident occurring on June 21, 1967. The plaintiff sued the defendant alleging that the driver of a taxicab owned by the defendant negligently drove through a red light and injured her. The trial was held in July, 1971. At the close of the defendant's case, the court granted the plaintiff's motion to increase the *ad damnum* clause from $25,000 to $50,000. The court also granted the plaintiff's motion for a directed verdict

---

* Probate judge, sitting on the Court of Appeals by assignment.

as to the defendant's liability. Thus, the only issue for the jury was the amount of the plaintiff's damages. The jury awarded the plaintiff $32,000. The defendant's motion for judgment notwithstanding the verdict or a new trial was denied, and he took this appeal of right.

Initially, the defendant argues that it was error to deny his motion for a new trial based on the plaintiff's failure to disclose certain details of her medical history before the trial. The defendant maintains that he was unable to adequately prepare for the trial because the plaintiff intentionally or negligently failed to give complete answers to the interrogatories with regard to her health history. Specifically, the defendant complains of the answers to interrogatories numbered 11, 12, and 15. Those interrogatories and the answers thereto read as follows:

*Q.* "11. From your own knowledge, describe any and all infirmities and disabilities from which you suffered before the accident involved in this claim or lawsuit.

*A.* "11. None.

*Q.* "12. State the names and addresses of all doctors whom you have seen or with whom you have consulted during the five years preceding the date of this accident, and the nature of the ailment, illness or other reason for which such doctor was consulted.

"(a) Give the approximate dates designating each.

*A.* "12. Dr. Melvin Fowler—E. Warren, Detroit—family doctor and for pregnancies.

*Q.* "15. Give the names and addresses of all hospitals where you have been either an in-patient or an out-patient during your entire life, and as to each such hospital give:

"(a) Dates of admission and discharge.

"(b) Nature of the ailment or illness for which you were hospitalized.

"(c) Nature of the operations performed.

"(d) Name and address of your attending physician and operating surgeon, if any.

*A.* "15. Receiving Hospital—May 2, 1963 through June 3, 1963—hit by car—physicians at Receiving Hospital."

However, during examination of Dr. Fowler, the plaintiff's family doctor, defense counsel learned that the plaintiff had been hospitalized at Grace Hospital for six days in April 1960 for pre-cardial pains and low back pain. There was a diagnosis of unstable lumbosacral joint and urinary problems. She had consulted Dr. Fowler twice in 1962 for pains in the neck and cervical spine. On June 11, 1962, Dr. Fowler diagnosed that the plaintiff had a large ventral hernia that could be a source of pain, and on July 9, 1962, he diagnosed rheumatoid arthritis. In October 1964 the plaintiff was hospitalized at Burton Mercy Hospital for ten days. She had stitches removed from her left leg and the doctor diagnosed essential hyperextension. On February 24, 1966, the plaintiff consulted Dr. Fowler about abdominal pain and in March 1967 she complained to him of chest pain.

The fact that the plaintiff did not list the various diagnoses that Dr. Fowler had made of her health between 1960 and 1967 does not necessarily mean that she intentionally or negligently failed to do so. See *Krim v Osborne,* 20 Mich App 237, 241 (1969), *leave den* 383 Mich 765 (1970). Human experience tells the Court that it is not uncommon for doctors to refrain from telling their patients the medical diagnosis of their ailments.

While Dr. Fowler, with the aid of his office records relative to the plaintiff, was able to testify at length and in detail regarding the plaintiff's past health, the transcript of that testimony does not show that he told the plaintiff what his vari-

ous diagnoses were. Even if he did, it would not be unusual with the passing of time for the patient to forget the medical terms, and perhaps the illnesses as well. The plaintiff testified that she did not remember the illnesses in 1960 and 1962, that she wasn't keeping a record, and the symptoms must not have bothered long enough for her to remember them.

Interrogatory 11 was stated in general terms and directed the plaintiff to describe any and all "infirmities and disabilities" from which she suffered before the accident. It would not have been unreasonable for the plaintiff to think that the phrase "infirmities and disabilities" did not include office consultations such as the plaintiff had with Dr. Fowler in 1966 and 1967 pertaining to abdominal and chest pains, even if she remembered the office consultations.

However, even allowing for lapses of memory, lack of knowledge of Dr. Fowler's diagnoses, and reasonable variance in the interpretation of the interrogatories, it would appear that the plaintiff should have mentioned the ten-day hospitalization at Burton Mercy Hospital in October 1964, just over four years before the answers to the interrogatories were given in November 1968.

While a new trial may be granted for misconduct, misrepresentation, or fraud by the prevailing party, GCR 1963, 527.1(2), (9), this is not a compelling case for doing so. Nearly a year before the trial, the defendant had medical authorizations from the plaintiff permitting him to examine her hospital and doctor records. The defendant did not move for more certain answers or further answers to the interrogatories on the basis that the answers were insufficient, nor does the record show that he took the deposition of the plaintiff. See

*Krim v Osborne, supra,* p 240; GCR 1963, 309; 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, pp 158–160. Additionally, the defendant did not move for a continuance pursuant to GCR 1963, 503.1, alleging that he had been prejudiced or unfairly surprised at trial. Further, the trial record shows that defense counsel had Dr. Fowler's medical records the night before he conducted most of his cross-examination of Dr. Fowler, at which time he brought out in detail plaintiff's previous medical history. Also, defense counsel spent a substantial part of his final argument in specifically directing the jury's attention to the plaintiff's failure to tell the "complete truth" about her past health. This Court strongly condemns the intentional giving of incomplete or inaccurate answers to interrogatories, but we do not find that the trial court erred in denying a new trial under the circumstances of this case.

The defendant also argues that it was reversible error to deny his motion for a mistrial based on the plaintiff's reference to insurance during cross-examination. The testimony resulting in alleged error concerned a different accident in which the plaintiff was injured in May, 1963. The colloquy was as follows:

"*Q.* Mrs. Crenshaw, was a lawsuit instituted with respect to the injury that you suffered?

"*A.* Pardon?

"*Q.* Your broken leg, was there a lawsuit instituted at that time, do you know?

"*A.* Was there a lawsuit?

"*Q.* Yes. Did you sue anyone when your leg was broke?

"*A.* The man didn't have any insurance.

"*Q.* Did you sue anyone?

"*A.* I couldn't sue him."

The defendant relies on MCLA 500.3030; MSA 24.13030, which states:

"In the original action brought by the injured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial."

The prohibition in MCLA 500.3030 on any reference to the insurer or the carrying of insurance by the defendant does not precisely cover the facts of this case where the reference to insurance applied to an earlier accident not involving the defendant. Additionally, the reference to insurance was only incidentally brought into the trial on cross-examination and the matter of insurance was not referred to again. There was clearly no flagrant violation of the spirit of the statute in this case.

*Felice v Weinman,* 372 Mich 278 (1964), relied on by the defendant, is distinguishable factually because in that case defense counsel openly injected insurance questions into the trial and also stated that he represented "the Auto Club". See also *Benmark v Steffen,* 374 Mich 155 (1965).

This Court has held that a single reference to insurance by counsel without a design to inject the question of insurance into the case does not require the granting of a mistrial. *Bishop v Wolinski,* 16 Mich App 753 (1969). Recently in *Cacavas v Bennett,* 37 Mich App 599, 604 (1972), *leave den,* 387 Mich 767 (1972), the law was summarized as follows:

"By statute, reference to available insurance coverage is not to be made by any party. MCLA 500.3030; MSA 24.13030. It has been repeatedly held that it is reversi-

ble error to intentionally interject the subject of insurance if the sole purpose is to inflame the passions of the jury so as to increase the size of the verdict. See *Felice v Weinman,* 372 Mich 278 (1964); *Benmark v Steffen,* 374 Mich 155 (1965); *Cartier v Young,* 31 Mich App 151 (1971). On the other hand, it is not reversible error if the subject is only incidentally brought into the trial, is only casually mentioned, or is used in good faith for purposes other than to inflame the passions of the jury. *Morris v Montgomery,* 229 Mich 509 (1924); *Sutzer v Allen,* 236 Mich 1 (1926); *White v Makela,* 304 Mich 425 (1943); *Watroba v Detroit,* 334 Mich 182 (1952); *Broitman v Kohn,* 16 Mich App 400 (1969)."

Under the circumstances of this case we find no abuse of discretion in the denial of the defendant's motion for a mistrial.

The defendant contends that it was reversible error for the trial court not to sustain his objections to plaintiff's final argument. The defendant had objected to the plaintiff's subdividing pain and suffering into "property rights" and "human rights". The court did not specifically rule on this objection but urged the plaintiff to move on with the argument. The defendant also objected to the plaintiff's asking the jury to consider how much it would cost to hire someone to suffer what the plaintiff had suffered.

In this state counsel may argue a per diem mathematical formula to the jury for the purpose of evaluating pain in dollars and cents. In *Yates v Wenk,* 363 Mich 311, 318 (1961), the Court said:

"Nor are we impressed that plaintiff's lawyer's use of the mathematical formula will lead toward horrendous verdicts. Such an argument is not, like the judge's instruction, binding on the jury. It will undoubtedly be effectively balanced by defendant's lawyer's counterargument. Further, juries automatically discount 'law-

yer talk' to some degree. And trial judges automatically instruct that such arguments are not evidence.

"In addition, if more be needed, the trial and appellate courts have ample means to restrain excessiveness in verdicts.

"With respect for the views of our learned brothers in New Jersey *(Botta [v Brunner,* 26 NJ 82; 138 A2d 713; 60 ALR2d 1331 (1958)]) and Wisconsin *(Affett [v Milwaukee & Suburban Transport Corp,* 11 Wis 2d 604; 106 NW2d 274 (1960)]), we perfer the reasoning on this problem of the Kentucky, Utah, Washington, and Florida courts: *Louisville & Nashville Railroad Company, Inc, v Mattingly* (Ky), 339 SW2d 155 [1960]; *Olsen v Preferred Risk Mutual Insurance Company,* 11 Utah 2d 23 (354 P2d 575) [1960]; *Jones v Hogan,* 56 Wash 2d 23 (351 P2d 153) [1960]; *Ratner v Arrington* (Fla), 111 So 2d 82 [1959].

"A lawyer's attempt in his jury argument to evaluate pain on a daily basis for purposes of illustration, we deem no more objectionable than his attempt to place a monetary value on the total pain and suffering experienced."

The plaintiff was apparently trying to persuade the jury to include in its monetary award an amount for both the mental suffering attendant upon a substantial impairment of the plaintiff's ability to function normally in doing her housework and attending social activities, and the physical pain accompanying the disability. While the phraseology employed may have been more confusing than helpful, we do not think that reversal is required. The defendant's final argument counterbalanced that of the plaintiff's, and the jury was instructed that pain and suffering could not be proven in a precise dollar amount, but was left to the sound judgment of the jury. The jury was also instructed that the arguments, statements, and remarks of the attorneys were not evidence. Defense counsel did not request any cautionary instruction concerning the allegedly improper final argument, and stated that he was satisfied with the instructions. On the authority of *Marr v Sagi-*

*naw County Agricultural Society,* 364 Mich 373 (1961), the propriety of the plaintiff's closing argument is not before this Court since the defendant did not request an instruction on the plaintiff's closing argument and did not object to the instructions given.

The plaintiff's reference to how much it would cost to hire someone to suffer what the plaintiff had suffered was improper. *Stone v Sinclair Refining Co,* 235 Mich 53 (1926). That was not the issue before the jury. The jury's duty was to decide under all the circumstances what should be allowed the plaintiff in addition to the other items of damage to which she was entitled in reasonable consideration of the pain and suffering necessarily endured or to be endured. 22 Am Jur 2d, Damages, § 109, p 159. Upon timely objection by the defendant, the court stated:

> *"The Court:* Well, it is a little unusual form of argument.
>
> "As long as the jurors understand what counsel is referring to, you can argue what you feel that the pain and suffering she endured was worth per day, per hour, or per year."

The *Marr* case, *supra,* stating that a request for curative instructions or an objection to the instructions is necessary to preserve the issue of the propriety of closing argument again is in point. The defendant having failed to do either cannot obtain a new trial since an appropriate instruction would have cured the error in the plaintiff's closing argument.

The defendant also maintains that the $32,000 verdict was grossly excessive and as such was a ground for a new trial, citing GCR 1963, 527.1(4). In *Stevens v Edward C Levy Co,* 376 Mich 1, 5

(1965), the Court cited with approval from 9 Michigan Law & Practice, Damages, § 61, pp 62–63:

" 'There is no fixed criterion for determining when an award of damages is excessive, but if an award is within the scope of the testimony, fairly represents the judgment of the jury, and does not appear to have been the result of prejudice, passion, partiality, sympathy, or corruption, it will generally be sustained, whether attacked as excessive or inadequate. However, if an award is so excessive as to shock the judicial conscience, it will be reduced.

" 'The permanency of an injury has a bearing on whether an award is excessive.' "

The evidence of damages in the present case included testimony by Dr. Fowler that he treated the plaintiff the day after the accident for injuries she sustained to her sternum, chest, left side of her body, her legs, her back, and her neck as a result of the accident. Some four months later he recommended hospitalization for the plaintiff because of her back pains and severe pain in her swollen right leg. The plaintiff was in the hospital for 12 days. It was Dr. Fowler's opinion that the plaintiff's osteoarthritic condition sustained as a result of the accident could not be cured.

Dr. Taylor, who treated the plaintiff for back problems over two years after the accident, stated that she would have back problems indefinitely, perhaps the rest of her life.

The plaintiff, who at the time of the accident was a 50-year-old widow of a minister with 9- and 10-year-old sons living at home, testified that after the accident her right leg would swell when she was active, she had nagging back pain, she had to reduce her church activities from five to two times a week, and she had to get help with her house-

work and the supervision of her two youngest children.

Recently, in *Stowers v Wolodzko,* 386 Mich 119 (1971), a $40,000 verdict for false imprisonment and assault and battery was sustained as being within the range of the evidence and not shocking to the judicial conscience. Similarly, in the present case we think the verdict was within the scope of the testimony, does not appear to be the result of prejudice, and is not shocking to our judicial conscience.

The defendant's final argument is that the trial court erred in directing a verdict on the issue of liability. He claims that the jury might not have believed the plaintiff or her witness, Gloria Turner, in which event there would have been no evidence that defendant's cabdriver was negligent. The defendant called no witnesses on the issue of liability but relied solely upon cross-examination of the plaintiff and witness Turner to avoid a directed verdict.

The credibility of the witnesses that gave testimony showing that the defendant's cabdriver was negligent is not an issue for the jury unless there is some evidence in the case showing that the defendant's cabdriver was not negligent. Although on a motion for a directed verdict the evidence is construed most favorably for the party opposing the motion, *Nowicki v Suddeth,* 7 Mich App 503 (1967), 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 530, under any version of the facts elicited at the trial the defendant's cabdriver was negligent and the plaintiff was not. Therefore, the trial court correctly directed a verdict on the issue of liability.

Affirmed, costs to the plaintiff.

All concurred.