## DANAHER v PARTRIDGE CREEK COUNTRY CLUB

Docket No. 54789. Submitted December 14, 1981, at Detroit.—Decided
May 19, 1982. Leave to appeal applied for.

Joseph O. Danaher and Theresa Danaher, husband and wife,
brought an action against Partridge Creek Country Club and
Partridge Creek Company for damages for injuries sustained by
Mr. Danaher while on the premises of the defendants. Mrs.
Danaher sued for loss of consortium. The jury returned a
verdict of $1,000,000 in favor of Mr. Danaher and $250,000 in
favor of Mrs. Danaher. Defendants appeal alleging error in the
trial court's instructions regarding negligence. Defendants fur-
ther allege that the jury verdict was grossly excessive and in
excess of the *ad damnum* clause, that plaintiffs' attorney made
an improper closing argument to the jury, that the court

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Amusements and Exhibitions § 68.
[2] 62 Am Jur 2d, Premises Liability § 39.
[3] 62 Am Jur 2d, Premises Liability § 62.
[4] 62 Am Jur 2d, Premises Liability § 51.
[5] 62 Am Jur 2d, Premises Liability § 74 *et seq.*
[6] 22 Am Jur 2d, Damages §§ 366, 367.
[7] 22 Am Jur 2d, Damages § 276.
[8] 75 Am Jur 2d, Trial §§ 222, 223.
   Propriety and prejudicial effect of reference by plaintiff's counsel, in
      jury trial of personal injuries or death action, to amount of
      damages claimed or expected by his client. 14 ALR3d 541.
[9] 75 Am Jur 2d, Trial § 317.
[10, 11] 5 Am Jur 2d, Appeal and Error §§ 624, 625.
   75 Am Jur 2d, Trial § 317.
[12] 75 Am Jur 2d, Trial § 283.
   Statement by counsel relating to race, nationality, or religion in
      civil action as prejudicial. 99 ALR2d 1249.
[13] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[14] 75 Am Jur 2d, Trial § 698.
[15] 75 Am Jur 2d, Trial § 709.
[16] Am Jur 2d New Topic Service, Comparative Negligence § 39.
   Modern development of comparative negligence doctrine having
      applicability to negligence actions generally. 78 ALR3d 339.
[17] 62 Am Jur 2d, Premises Liability § 55.

improperly denied their request for a special verdict and that the court improperly failed to apply Mr. Danaher's comparative negligence to the amount awarded to Mrs. Danaher. *Held:*

1. The trial court was correct in applying a standard or burden of proof that treated Mr. Danaher as a business invitee. The trial court was correct in its conclusion that the statute regarding liability of a property owner or occupant to recreational users was not intended to apply to private lands used for outdoor recreational purposes, but which also constitute commercial enterprises.

2. The verdict regarding both plaintiffs is supported by the evidence at trial, is not grossly excessive, and does not shock the conscience.

3. The trial court did not err by refusing to limit the verdict which was in excess of the *ad damnum* clause. It is not the rule in Michigan that a verdict should not stand where it is in excess of the *ad damnum* clause.

4. The record, instructions and briefs reveal no manifest injustice, therefore, defendants' failure to object to plaintiffs' attorney's closing argument and allegedly improper comments on matters not of record, and to the instructions given by the court, precludes appellate review.

5. The trial court did not improperly comment on the evidence. The court sufficiently told the jury that it was reading the theories of the parties. The court has the right to point out that the evidence supports a particular theory.

6. The trial court properly denied defendants' request for a special verdict since the case was not so complex that it was necessary to submit special findings of fact.

7. The trial court erred in not reducing Mrs. Danaher's recovery in proportion to Mr. Danaher's degree of comparative negligence. Mrs. Danaher should not be able to recover for all of the loss of consortium established since she would not have suffered all of the loss established but for the comparative negligence of Mr. Danaher, her co-plaintiff.

Affirmed in part, reversed in part.

Bashara, J., dissented. While he agrees with the majority's conclusions regarding Mrs. Danaher's loss of consortium, he disagrees with the majority's determination that Mr. Danaher was a licensee. He would hold that Mr. Danaher was a trespasser. He would reverse and remand for a new trial.

OPINION OF THE COURT

1. PROPERTY — LIABILITY OF OWNER OR OCCUPANT — RECREATIONAL USE — STATUTES.

The statute regarding liability of a property owner or occupant to recreational users of land is not intended to be applied to private lands held out for recreational use to those who pay a fee (MCL 300.201; MSA 13.1485).

2. WORDS AND PHRASES — INVITEE.

An invitee is a person who is on the owner's premises for a purpose mutually beneficial to both parties.

3. NEGLIGENCE — OCCUPIER OF LAND — INVITEE.

An occupier of land owes a duty to an invitee on his land to exercise ordinary care and prudence to render the premises reasonably safe.

4. WORDS AND PHRASES — LICENSEE.

A licensee is a person who desires to be on the premises of another because of some personal, unshared benefit and who is merely tolerated by the owner of the premises.

5. NEGLIGENCE — POSSESSOR OF LAND — LICENSEE — REASONABLE CARE.

A possessor of land is liable for physical harm caused to a licensee by a condition of the property if, but only if, the possessor knew or had reason to know of the condition, realized that an unreasonable risk of harm to the licensee was involved, expected that the licensee would not discover the danger, and failed to exercise reasonable care to make the conditions safe or to warn the licensee of the condition and risk involved, and the licensee did not know or have reason to know of the condition and risk involved.

6. JUDGMENTS — JURY VERDICT.

A jury verdict in a personal injury case should not be set aside as long as the amount awarded is within the range of the evidence, does not shock the conscience, was not secured by improper means, prejudice or sympathy and is within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries and pain and suffering.

7. DAMAGES — AD DAMNUM CLAUSES.

A trial court has the authority to award a greater amount of actual damages than a plaintiff has requested in an *ad damnum* clause, even though there was no motion to amend this

clause, where the amount awarded is within the range of the evidence.

8. Trial — Arguments to Jury.

It is not error for the attorney for plaintiffs in a personal injury case to make comments to the jury concerning pain and suffering and to urge that adequate damages be awarded.

9. Trial — Arguments to Jury — Appeals to Sympathy.

It is error for an attorney in a personal injury case to attempt to appeal to the sympathy of the jury.

10. Appeal — Arguments to Jury — Preserving Question.

A request for a curative instruction or an objection to the instruction given is necessary to preserve the issue of the propriety of a closing argument or of a jury instruction.

11. Appeal — Improper Comments — Preserving Question.

A request for a curative instruction or an objection is necessary to preserve the issue of a party's improper comment on matters not in evidence.

12. Trial — Arguments to Jury — Reference to Religious Creed.

It is error in a trial for personal injuries for a party to interject comments as to the religious creed of an opponent.

13. Appeal — Jury Instructions — Preserving Question.

Failure to raise an objection to a jury instruction in the trial court precludes appellate review absent manifest injustice.

14. Trial — Jury Instructions — Theories of the Case — Evidence.

It is proper for a trial court to tell a jury what the theory of each party is and to point out that the evidence supports a particular theory.

15. Trial — Jury Instructions — Special Verdicts — Appeal.

A trial court does not err in denying a party's request for a special verdict where the case is not so complex that there is a necessity to submit special findings of fact.

16. Judgments — Comparative Negligence — Reduction in Judgments.

It is proper in a trial for damages for personal injuries sustained by a plaintiff husband and for loss of consortium by the plaintiff wife to reduce the recovery to be paid the wife for her loss of consortium by the percentage of comparative negligence attributed to the husband since her co-plaintiff husband is

partly responsible for the loss of consortium that she has suffered.

DISSENT BY BASHARA, J.

17. NEGLIGENCE — PROPERTY — RECREATIONAL USE — TRESPASS.

*A person who is injured while on private lands held out for recreational use to those who pay a fee is a trespasser on the premises where he does not pay a fee, does not enter the premises through the normal point of entry, does not make his presence known to the owners or occupier of the land, and has knowledge of the condition of the land and the risks involved.*

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman),* for plaintiffs.

*Tyler & Canham, P.C.* (by *James N. Canham* and *Michael J. Walter),* for defendants.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

R. I. COOPER, J. On August 6, 1975, plaintiff Joseph O. Danaher went to the Partridge Creek Country Club at approximately 6:30 p.m. He had anticipated playing golf with his son. Upon arrival he decided to walk over to a pond located on the golf course premises. He entered the golf course premises through an open delivery gate and went across a large field to get to the pond. When he arrived at the pond he tossed bread crumbs into the water to feed the fish and in general was viewing the pond to see if it offered any fishing potential. While engaged in this activity he was struck by a golf ball which originated from the fifth tee. The pond was not visible to golfers using the fifth tee. Mr. Danaher had played the Partridge Creek Country Club course before and was an experienced golfer. As a result of the accident,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Mr. Danaher lost his right eye. He was hospitalized for 15 days and underwent an operation. Medical expenses were stipulated at $4,000 and his lost wages were stipulated at $1,875. Mr. Danaher's life expectancy was 18.97 years.

In their complaint, plaintiffs asked for damages "not exceeding" $50,000 and $10,000 for Joseph O. Danaher and Theresa Danaher, respectively. Theresa Danaher is the wife of Joseph O. Danaher and sued for loss of consortium. There was a mediated recommedation of $10,000 which the plaintiffs accepted, but which the defendants rejected. At trial a jury returned a verdict of $1,000,-000 in favor of plaintiff Joseph O. Danaher and $250,000 in favor of plaintiff Theresa Danaher. The jury found that Mr. Danaher was 39% comparatively negligent. The trial court thus reduced plaintiff Joseph O. Danaher's award by 39% but did not reduce the award to Theresa Danaher.

Prior to commencement of the jury trial, plaintiffs were allowed to amend their complaint by removing the allegation that Mr. Danaher was a trespasser. At trial, the court did not allow disclosure to the jury of the fact that Mr. Danaher had originally alleged he was a trespasser. Also, the trial court did not allow reference to the clause by which plaintiffs asked for $60,000. Defendants sought an instruction based upon MCL 300.201; MSA 13.1485 to the effect that defendants could not be found liable unless there was a showing of gross negligence or wilful and wanton misconduct by the defendants. The trial court declined this request and instead instructed on ordinary negligence.

Defendants seek to characterize plaintiff Joseph O. Danaher as a trespasser. MCL 300.201; MSA 13.1485 provides as follows:

"Sec. 1. No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee."

The trial court was correct in its conclusion that said statute was not intended to apply to private lands which are used for outdoor recreational uses, but which also constitute commercial enterprises. A study of the available legislative committee notes and case law applying said statute clearly shows that the intent of the Legislature was to protect holders of private lands whose property, by its very outdoor nature, would be subject to use by members of the general public for recreational purposes but who did not seek or obtain permission to use such lands from the property owners. The statute was applied where a decedent was killed in a snowmobile accident when his snowmobile struck a guy wire on land owned by the Saginaw County Agricultural Society. *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975), *aff'd in part and rev'd in part* 394 Mich 459; 231 NW2d 653 (1975). See also *Thone v Nicholson,* 84 Mich App 538; 269 NW2d 665 (1978), *lv den* 405 Mich 819 (1979), where a plaintiff was injured when the motorcycle he was riding along an abandoned railroad right-of-way struck the bank of a creek which intersected the right-of-way. There the trial court also correctly applied said statute. See also *Crawford v Consumers Power Co,* 108 Mich App 232; 310 NW2d 343 (1981), where plaintiff's decedent was electrocuted when she

walked into a wooded area and came into contact with a downed electric wire. There the court also upheld in part defendant's motion for summary judgment and required that plaintiffs pursue only their claim for wilful and wanton misconduct. These cases clearly show that said statute has been applied consistently to vacant but privately owned land. It has not been applied to circumstances such as those in the present case, where the land is held out for a recreational use to those who pay a fee. It is clear that the character of the land is important and, in the present case, the trial court was correct in applying a standard or burden of proof that treated the plaintiff as a business invitee. Although plaintiff Joseph O. Danaher had not purchased the right to play golf that day, he was a golfer who was viewing the premises prior to a decision to actually play golf. There was no showing that he violated any no-trespassing signs or otherwise was located in an area that was not open to the general public. in fact there was testimony that children and observers also frequented the pond to retrieve and collect lost golf balls as well as to fish and sightsee. Thus, a successful argument could also have been made that the defendants would have been liable to persons visiting the pond as licensees.

This Court has defined an invitee as one who is on the owner's premises for a purpose mutually beneficial to both parties. *Socha v Passino,* 105 Mich App 445; 306 NW2d 316 (1981), *Kucken v Hygrade Food Products Corp,* 51 Mich App 471; 215 NW2d 772 (1974).

The duty which an occupier of land owes an invitee is to "exercise ordinary care and prudence to render the premises reasonably safe". *Preston v Sleziak,* 383 Mich 442, 447; 175 NW2d 759 (1970), quoting Cooley on Torts (1st ed), p 605.

A licensee is one who desires to be on the premises of another because of some personal unshared benefit and is merely tolerated on the premises by the owner. *Socha, supra.* The duty owed to a licensee as set forth in 2 Restatement Torts, 2d, § 342, p 210 and adopted by the Supreme Court in *Preston, supra,* 453, is as follows:

" 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

" '(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

" '(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

" '(c) the licensees do not know or have reason to know of the condition and the risk involved.' "

There was ample testimony to show that plaintiff Joseph O. Danaher had come to the premises of the defendants for the purpose of exercising the right to golf as a business invitee and, further, that although he did not in fact exercise that right he also could have been described as a licensee, for the reason that defendant golf course was well aware that persons frequently visited the pond in question even though they were there for purposes other than golfing.

Next the defendants argue that the jury verdict was clearly and grossly excessive thereby requiring either a new trial or, in the alternative, remittitur. Regarding plaintiff Joseph O. Danaher, the testimony reveals that his eyesight was important to him in his occupation as a weather stripper and

caulker. He has lost some of his depth perception. He has to exercise additional care in climbing up and down ladders. He is constantly afraid that his remaining good eye will be damaged. He suffers a visual defect in that there is a blank area on one side of his field of vision. He has to lubricate the artificial eye approximately four times a day. Initially he suffered infections in the artificial eye. Finally, he suffers from a fear that if he did lose his good eye he would be blind, could not hold a job, and would not be of any use to anyone. Regarding plaintiff Theresa Danaher, there was testimony to the effect that her husband has become more withdrawn, that he does not engage in as many social activities as he did prior to the accident. She has had to assist him in caring for his artificial eye and also suffers the new insecurities experienced by her husband. This Court is satisfied that the verdict regarding both plaintiffs was supported by the evidence at trial. In *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965), the Supreme Court quoted *Cleven v Griffin,* 298 Mich 139; 298 NW 482 (1941), as follows:

" 'There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous v Conor,* 266 Mich 397 [254 NW 143 (1934)]; *Weil v Longyear,* 263 Mich 22 [248 NW 536 (1933)]. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood v Earl Paige & Co,* 239 Mich 485 [214 NW 402 (1927)]. We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. *Watrous v Conor, supra; Michaels v Smith,* 240 Mich 671 [216 NW 413 (1927)].' "

In *Pippen v Denison Division of Abex Corp*, 66
Mich App 664; 239 NW2d 704 (1976), this Court
quoted *Stevens, supra,* for the proposition that:

" 'As long as the amount awarded is within the range
of the evidence, and within the limits of what reason-
able minds might deem just compensation for such
imponderable items as personal injuries sustained and
pain and suffering, the verdict rendered should not be
set aside.' " 66 Mich App 664, 675.

In *Pippen,* the 67-year-old plaintiff lost an arm in
an industrial accident. The jury returned a verdict
of $1,250,000 for the plaintiff. This Court held that
the amount was not excessive. Upon a review of
the cases cited and the evidence submitted in the
present case, this Court does not find that the
award to either plaintiff shocks the conscience.
The amounts of both awards are upheld.

Next defendants argue that the verdict should
not stand because it was in excess of the *ad
damnum* clause. The case of *Burnett v Mackworth
G Rees, Inc,* 109 Mich App 547; 311 NW2d 417
(1981), provides a pertinent analogy to our present
case. In *Burnett,* 554-555, this Court stated:

"Additionally, we note that Cutler-Hammer's argu-
ments that the verdict should not stand because it was
in excess of the *ad damnum* clause is not the rule in
Michigan. GCR 1963, 518.3 makes it quite clear that
this discrepancy is not fatal to a jury award. The rule
states in pertinent part that 'every final judgment shall
grant relief to which the party in whose favor it is
rendered is entitled, even if the party has not de-
manded such relief in his pleadings'. See also *Piatkow-
ski v Mok,* 29 Mich App 426, 428; 185 NW2d 413 (1971),
*Gibeault v City of Highland Park,* 49 Mich App 736,
738; 212 NW2d 818 (1973), *aff'd* 391 Mich 814 (1974),
and see also *Ravenis v Detroit General Hospital,* 63

Mich App 79, 86; 234 NW2d 411 (1975), *lv den* 395 Mich
824 (1976), where the Court allowed an award in excess
of the *ad damnum* clause, where no amendment to the
clause had been made.

"Concededly, the majority in *Tomei [v Bloom Associ-
ates, Inc,* 75 Mich App 661; 255 NW2d 727 (1977)],
stated that awards in excess of the *ad damnum* clause
are not allowed unless there is proper amendment,
which may be made after the verdict in the trial court's
discretion. *Tomei* indicated that liberal amendment
should be the rule unless a jury award is not supported
by the evidence. *Id.,* 672; see also *Precopio v Detroit,* 94
Mich App 506, 510-511; 289 NW2d 34 (1979).

\* \* \*

"In the present case, although the *ad damnum* clause
was apparently never amended, the purposes of such an
amendment were met. The trial court considered and
denied motions for judgment notwithstanding the ver-
dict and for new trial or remittitur. Thus, the trial
court fully explored the question of whether the award
was supported by the evidence. To now reduce the
award for plaintiff's failure to request post-trial amend-
ment of the *ad damnum* clause would be an exaltation
of form over substance. It is noteworthy that, as the
court rules are now amended, a pleading need not
demand a particular monetary award unless the oppos-
ing party requests specificity. GCR 1963, 111.1(3), 309.
We believe that the award made was supported by the
evidence."

It is clear that the verdict was not such as to
shock the conscience and that there was sufficient
evidence to support the verdict reached. Based
upon the above cited case law, the trial court did
not err by refusing to limit the verdict to $60,000
or by refusing to order a new trial.

Defendants argue that reversible error was com-
mitted by plaintiffs' attorney in that plaintiffs'
attorney attempted to appeal to the sympathy of
the jury. Plaintiffs' attorney argued as follows:

"[The law] says if you can't restore him to the condition he was, then he is to be compensated as much as you could possibly compensate for it in terms of dollars and cents for that loss. Frankly, if it were mine, I don't think—I wouldn't trade all that for anything.

"So the fact is that it is an incredible position to place yourself in. How do you put a dollar and cents value on something like that? Is two million dollars too much? Is five million dollars not enough?"

It is not error for the attorney for plaintiffs to make comments concerning pain and suffering and to urge that adequate damages be awarded. *Retan v Lake Shore & M S R Co,* 94 Mich 146; 53 NW 1094 (1892). Nevertheless, any attempt to appeal to the sympathy of the jury is improper. *Clark v Grand Trunk W R Co,* 367 Mich 396; 116 NW2d 914 (1962). The statement that "[n]obody would go through this pain and suffering for any sum of money" was held to be improper argument by the Supreme Court in *Stone v Sinclair Refining Co,* 235 Mich 53; 209 NW 118 (1926). Similarly, in *Crenshaw v Goza,* 43 Mich App 437; 204 NW2d 302 (1972), this Court held that reference by plaintiff's counsel to how much it would cost to hire someone to suffer what the plaintiff had suffered was improper as "[t]hat was not the issue before the jury". 43 Mich App 437, 446.

However, a request for curative instructions or an objection to the instructions is necessary to preserve the issue of the propriety of a closing argument. *Crenshaw, supra, Marr v Saginaw County Agricultural Society,* 364 Mich 373; 110 NW2d 748 (1961). The defendants in the case at bar, having failed to do either, should not be allowed to obtain a new trial since an appropriate instruction would have cured the error in plaintiffs' counsel's closing argument. Further, defen-

dants' objection that plaintiffs' counsel improperly commented on matters not in evidence also has not been preserved for appeal as defendants did not object or request a curative instruction. *Koepel v St Joseph Hospital,* 381 Mich 440; 163 NW2d 222 (1968). Further, defendants also are not without error in that defendants improperly brought forth evidence as to the religious faith of plaintiffs. It is error to interject comments as to the religious creed of an opponent. *Elliott v A J Smith Contracting Co,* 358 Mich 398; 100 NW2d 257 (1960). Further, defendants contend that the trial court's instructions were incomplete, inaccurate, prejudicial, confusing and contradictory. However, defendants failed to preserve their objection by objecting at trial in a timely and specific manner. Where a party fails to so object, appellate review is precluded absent manifest injustice. *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981), *Gage v Ford Motor Co,* 102 Mich App 310; 301 NW2d 517 (1980). A review of the record, instructions and briefs reveals no manifest injustice in the instant case. Further, defendants argue that the court improperly commented upon the evidence. However, the court's comments were related to the portion of the jury instructions whereby the court read the theories of both parties to the jury. Upon review, this Court is satisfied that the trial court sufficiently communicated to the jury that it was reading the theories of the parties. The court has a right to point out to the jury that the evidence supports a particular theory. *Rogers v Ferris,* 107 Mich 126; 64 NW 1048 (1895).

Defendants argue that the trial court incorrectly refused to submit a request for a special verdict submitted by defense counsel. In addition defendants argue that the trial court committed error

by failing to apply the 39% comparative liability of Joseph O. Danaher to the jury award to his wife, plaintiff Theresa Danaher. GCR 1963, 514 provides:

"The court may require the jury to return a special verdict in the form of a special written finding upon each issue of fact and in such cases no general verdict shall be returned."

The specific questions presented to the jury in this case were derived from the landmark case of *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), *reh den* 406 Mich 1119 (1979). The verdict form contained in the trial court record of this case reads as follows:

"We, the jury, make the following answers to the questions submitted by the court:

"1. Was the defendant negligent?

"*Answer:* <u>yes</u> (Yes or No). (If your answer is 'No', do not answer any further question.)

"2. Was the defendant's negligence a proximate cause of injury or damage to the plaintiff?

"*Answer:* <u>yes</u> (Yes or No). (If your answer is 'No', do not answer any further question.)

"3. What is the total amount of the plaintiff's damages?

"*Answer:* <u>$1,000,000.00</u> (Mr. Danaher) <u>$250,000.00</u> (Mrs. Danaher).

"4. Was the plaintiff negligent?

"*Answer:* _____ (Yes or No). (If your answer is 'No', do not answer any further question.)

"5. Was the plaintiff's negligence a proximate cause of the injury or damage to the plaintiff?

"*Answer:* <u>yes</u> (Yes or No). (If your answer is 'No', do not answer any further question.)

"6. If you find that the plaintiff was also negligent

and that his negligence was a proximate cause of his injury or damage, what percentage of the total occurrence is attributable to the plaintiff?

"*Answer:* 39%.

"_____ Foreperson."

Although GCR 1963, 514 states that a general verdict shall not be returned where the verdict form provides for special written findings, here the trial court substantially followed the guidance provided in *Placek v Sterling Heights, supra.* The court supported its denial of the request for a special verdict when it observed that the case was not so complex that there would be a necessity to submit special findings of fact. This Court agrees with that conclusion.

Next, this Court addresses the question whether the trial court improperly failed to apply plaintiff Joseph O. Danaher's 39% comparative negligence to the amount awarded to his wife. The trial court determined, as a matter of law, that the wife's recovery for loss of consortium was not to be reduced in proportion to the husband's degree of comparative negligence. This is a matter of first impression in Michigan. The landmark case of *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946), clearly states that a husband driver's negligence shall not be imputed to his passenger wife absent any showing that she failed to exercise proper care and caution as a passenger. Thus, there is foundation for the conclusion that a husband's negligence may not be imputed to the wife. However, at the time of the *Bricker* decision, Michigan applied the concept of contributory negligence which would have totally barred any action by the administrator of the deceased husband's estate and the Court clearly felt that it

would not be proper to therefore also bar the husband's wife from being able to recover. Also, the *Bricker* case observed that Michigan, at that time, was the only state that imputed the negligence of the driver husband to his passenger wife. However, the present case rests upon the landmark *Placek* case which provides a different foundation of law based upon new concepts developed via stare decisis case law. This Court agrees that under the *Bricker* ruling it was often unfair that a passenger wife was not allowed to recover any damages due to the then applied concept of contributory negligence. However, under theories of comparative negligence, it would also be unfair for the defendant golf course in our present case to bear the entire burden of the wife's loss of consortium when there is a jury finding that the plaintiff husband was partially responsible for his own injuries, which then also resulted in a loss to his wife. It is a matter of fairness and logic that but for the comparative negligence of her husband, the plaintiff wife would not have suffered all of the loss of consortium established. Because Michigan has established an approach of pure comparative negligence, this Court feels it is consistent that the plaintiff wife's recovery take into consideration the source of her loss which also would include the negligence of her husband Joseph O. Danaher. It would be an unwise use of court time to require the defendant golf course to reimburse plaintiff Theresa Danaher in full and then to sue plaintiff Joseph O. Danaher to recover the proportion of recovery paid to Theresa Danaher based upon Joseph O. Danaher's 39% comparative negligence. In effect, plaintiff Theresa Danaher should not be expected to be able to recover full costs from defendants when it is clear that her co-plaintiff is

also partially responsible for the loss of consortium that she has suffered.

Affirmed in part and reversed in part.

N. J. KAUFMAN, J., concurred.

BASHARA, J. *(dissenting)*. I respectfully dissent. While I am in agreement with the majority's conclusions regarding loss of consortium, it is my belief that the record does not give rise to any facts that would lead a finder of fact to the conclusion that the plaintiff husband was anything but a trespasser at the time of the injury.

It may have been his intention to purchase an admission ticket and play golf at a later time. The fact remains that he did not enter the premises through the normal point of entry. Nor did he make his presence known to any official of the golf club. Mr. Danaher should not be placed in the same category as children climbing over a fence to visit an attractive nuisance, such as a fishpond on a golf course. He was well aware of the purpose of the facility and knew that he was taking a risk which might injure him.

*Preston v Sleziak,* 383 Mich 442; 175 NW2d 759 (1970), relied on by the majority, seems, instead, to preclude plaintiff from being a licensee on the premises. That case sets forth the requirement that the licensee have no knowledge of the condition and risk involved. Plaintiff clearly does not fit that mold. He had played golf at defendants' course several times and knew of the dangers inherent at the pond.

I would, therefore, hold that plaintiff husband was a trespasser and reverse and remand for a new trial.