# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE BRADY, as Guardian of THOMAS
ROBERT MIDDLETON,

     Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY,

     Defendant-Appellee.

UNPUBLISHED
June 21, 2016

No. 324864
Oakland Circuit Court
LC No. 2012-128435-NF

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Plaintiff, as guardian of her son, Thomas Robert Middleton, brought this action for recovery of 24-hour attendant care no-fault benefits. Following a trial, a jury concluded that plaintiff was entitled to a reasonable hourly daytime rate of $11.44, the rate then paid by defendant, Home-Owners Insurance Company, but found that the hourly nightly rate of $7.40 paid by defendant was unreasonable, and awarded a reasonable hourly nighttime rate of $11.44. The difference in the nighttime rates between October 2011 and May 31, 2014, resulted in a judgment of $27,317.69 in favor of plaintiff. At trial, plaintiff asserted that $30 an hour was the reasonable rate for the 24-hour attendant care services provided to her son in light of his behavioral and cognitive injuries caused by a traumatic brain injury sustained in an automobile accident. Plaintiff now appeals as of right. We affirm in part, reverse in part, and remand for a new trial consistent with this opinion.

## I. FACTS AND PROCEEDINGS

In August 2011, 18-year-old Thomas Middleton ("Tommy") suffered a traumatic brain injury in an automobile accident. Before the accident, Tommy had been diagnosed with Asperger's syndrome and attention deficit/hyperactivity disorder (ADHD). Following the accident, Tommy required an extensive stay in both a hospital and rehabilitation facility. Doctors determined that a home setting was more beneficial than an institutional setting. Tommy was ultimately discharged to plaintiff's home, but his doctor prescribed 24-hour attendant care. Plaintiff established a corporate entity that employed family members and a close friend to care for Tommy. Tommy's cognitive deficits also caused anger management, impulse, and safety issues, and triggers for those issues included alteration in scheduling and unfamiliar

-1-

events. Consequently, the caregivers had to recognize Tommy's triggers and act accordingly. Tommy's home care was supplemented by various therapies that occurred outside the home.

Because the 24-hour attendant care prescription did not contain specific direction, defendant's representative determined that it was the lowest level of supervision required and could be fulfilled by a home health aide. Thus, the rate for the service was paid at $11.44 for daytime hours and $7.40 for nighttime hours.

Although Tommy had a case manager, plaintiff was a registered nurse and she performed some of the functions of a case manager. She attended all of Tommy's doctor appointments and scheduled, coordinated, and provided direction to all of Tommy's caregivers. The home business plaintiff established managed the appropriate deductions and payroll for Tommy's caregivers. The caregivers were paid $10.00 an hour because that was all plaintiff could afford and did not include any payment to plaintiff. However, plaintiff did not submit a request for payment as a case manager, registered nurse, or business to defendant.

After this action was filed, Tommy's doctor altered the prescription for 24-hour attendant care to provide that he needed a behavioral technician or life skills trainer, not a home health aide. Although plaintiff presented evidence that supported a range of hourly rates for the position, she requested $30 an hour at trial. Defendant disputed that a change in rate was warranted, particularly because Tommy's caregivers did not have specialized medical training, and plaintiff acknowledged that the behavioral training therapy was paid for by defendant outside the home setting. Ultimately, the jury concluded that $11.44 was a reasonable rate for the attendant care on a 24-hour basis.

## II. ANALYSIS

Plaintiff first argues that the trial court erred by instructing the jury that agency rates for similar attendant care services were not relevant and by failing to instruct the jury that comparable agency rates was an appropriate consideration. A claim of instructional error is reviewed de novo, but the trial court's determination whether a jury instruction is applicable and accurate is reviewed for an abuse of discretion. *Alfieri v Bertorelli*, 295 Mich App 189, 197; 813 NW2d 772 (2012). Whether a supplemental jury instruction is warranted is also reviewed for an abuse of discretion. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Nelson v Dubose*, 291 Mich App 496, 500; 806 NW2d 333 (2011).

"Jury instructions are reviewed in their entirety to determine whether they accurately and fairly presented the applicable law and the parties' theories." *Guerrero*, 280 Mich App at 660. The instructions should not omit material issues, defenses, or theories that are warranted by the evidence. *Ward v Consol Rail Corp*, 472 Mich 77, 83-84; 693 NW2d 366 (2005). "When the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001). A supplemental instruction must be modeled as nearly as possible to the style of the standard jury instructions and must be "concise, understandable, conversational, unslanted, and nonargumentative." *Id*. at 402.

A no-fault claim requires an insured to establish that he or she is entitled to benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 407; 751 NW2d 443 (2008). Personal injury protection benefits are payable for allowable expenses incurred for reasonably necessary products, services, and accommodations for the injured person's care, recovery, or rehabilitation. MCL 500.3107(1)(a). The plaintiff must prove that the charge for the service was reasonable, the expense was reasonably necessary, and it was incurred. *Williams v AAA Mich*, 250 Mich App 249, 258; 646 NW2d 476 (2002).

Attendant care services need not be performed by trained medical personnel. *Van Marter v American Fidelity Fire Ins Co*, 114 Mich App 171, 180; 318 NW2d 679 (1982). In *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 665; 819 NW2d 28 (2011), this Court held that "the market rate for agency-provided attendant-care services bears relevance to establishing a rate for family-provided services." In *Douglas v Allstate Ins Co*, 492 Mich 241, 276; 821 NW2d 472 (2012), our Supreme Court concluded that a fact-finder should focus on the individual's compensation, holding "that a fact-finder may base the hourly rate for a family member's provision of attendant care services on what health care agencies compensate their employees, but what health care agencies charge their patients is too attenuated from the appropriate hourly rate for a family member's services to be controlling." Although the *Douglas* Court recognized that it was not addressing an admissibility issue, *id*., at 276 n 79, it nonetheless acknowledged that admission of an agency rate may be helpful in calculating a rate, though it could not be uncritically adopted. *Id*. at 276. Importantly, the Court stated that an agency rate may be relevant particularly when "the individual caregiver has overhead and administrative costs similar to those of a commercial agency." *Id*.

Plaintiff requested a jury instruction that allowed the jury to consider agency rates as evidence of an appropriate rate for the family members' care for Tommy. However, contrary to the holding in *Hardrick* and the statements in *Douglas*, the trial court precluded the jury from considering any evidence of rates charged by agencies:

> "Reference to rates charged by agencies to insurers or other entities (with regard to similar attendant care services as those being provided to Middleton) are irrelevant and should not be considered as part of your decision on an appropriate hourly rate (for such care)."

This instruction was provided, despite the fact that *Hardrick* stated that agency rates are at least a minimally relevant factor for a jury to consider in a home attendant care situation, and *Douglas*'s specific reference to admissibility of agency rates when a party (as plaintiff testified to at trial) has overhead costs similar to that of a commercial agency. As defendant acknowledges on appeal[1], this was error. Hence, as to the issue of the appropriate rate for family members

---

[1] "The trial record admittedly contains some evidence from which the jury could have concluded that 'the individual caregiver has overhead and administrative costs similar to those of a commercial agency.' *Id*. Thus, Defendant concedes that Plaintiff's 'agency rates' instruction would have been permissible."

providing home attendant care services to Tommy, the trial court erred in instructing the jury that agency rates were *irrelevant*[2] and not to be considered, and in refusing to instruct as plaintiff requested on that issue.

Defendant argues that this instructional error was harmless because "the jury unmistakably rejected Plaintiff's home business theory." We cannot accept that argument because it would have been very difficult—if not impossible—for the jury to accept plaintiff's theory when the court instructed it not to consider the exact evidence that would have allowed plaintiff to succeed on that theory. Nor do we agree with defendant that plaintiff's alleged failure to request reimbursement from defendant for these business related expenses bars these claims. Plaintiff is not seeking reimbursement of those specific costs, but is instead seeking a higher rate for attendant care services, in part because of those business costs. And obtaining a higher rate for attendant care is exactly what was at issue. We therefore reverse and remand for a new trial only on the issue of the appropriate rate for Tommy's attendant care services.[3] We now turn to several evidentiary issues that may arise again at trial.

Plaintiff argues that the trial court erred by excluding evidence of plaintiff's earnings as a registered nurse when her training was an integral part of Tommy's care, recovery, and rehabilitation. A trial court's decision to exclude evidence is reviewed for an abuse of discretion, but any preliminary questions of law are reviewed de novo. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007). An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Id*. at 158.

Although plaintiff did not specifically raise in the final pretrial order the issue that nursing services were required and that the $30 an hour sought was consistent with the wage of a nurse, *Wilhelm v Mustafa*, 243 Mich App 478, 485; 624 NW2d 435 (2000), even if she did through several broad statements about attendant care and reference to her part-time nursing job, we nonetheless find no abuse of discretion in the trial court's ruling. For one, the trial court did not abuse its discretion by holding that the evidence of plaintiff's wage as a nurse was not relevant, MRE 401; MRE 402; *Omian v Chrysler Group LLC*, 309 Mich App 297, 308; 869 NW2d 625 (2015), because the issue for trial was essentially whether Tommy's attendant care providers should be paid at the rate of a home health aide or the higher rate of a life skills trainer or behavioral technician.

---

[2] Though this evidence should have been presented to the jury, it does not, of course, have to be accepted by the jury.

[3] This holding does not apply to plaintiff's argument on appeal regarding compensation for case management services, for as defendant argues, those expenses were not at issue in this case. In plaintiff's complaint, the joint final pretrial order, and in plaintiff's opening statement, all that is placed at issue is the appropriate rate for Tommy's attendant care services. Additionally, it was undisputed that Tommy had a case manager regardless of the role plaintiff voluntarily took in her child's care.

Even if it was an abuse of discretion, it was harmless, because the jury was aware of plaintiff's employment and she argued that her nursing skills were necessary to Tommy's proper care. Plaintiff testified that she was a registered nurse, continued to work on a part-time basis, and delineated her extensive involvement with Tommy's care. Defendant, of course, argued that Tommy's attendant care did not require a nursing degree, and so a higher rate was not necessitated simply because plaintiff was also a practicing nurse. As a result, the jury had evidence on this issue such that it could have provided a higher rate if it determined such was need for Tommy's care. It did not. Under the circumstances, no error requiring reversal exists on this issue.

Plaintiff next argues that the trial court erred in using defendant's modified verdict form at trial. Whether a special verdict form may be submitted to the jury is within the trial court's discretion. *In re Portus*, 142 Mich App 799, 803-804; 371 NW2d 871 (1985). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014).

Plaintiff requested that the following verdict form be submitted to the jury:

We, the jury, make the following answers to the questions submitted by the Court:

ALLOWABLE EXPENSES

QUESTION NO. 1: What is the amount of allowable expenses owed to the plaintiff (include only expenses not already paid by the defendant from August 24, 2011, through the present)?

$_____.

INTEREST

QUESTION NO. 2: Was payment for any of the expenses or losses to which the plaintiff was entitled overdue?

(Payment for an expense or loss is overdue if it is not paid within 30 days after the defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss became overdue.)

A. Answer: ___(yes or no)

B. If your answer is "yes", what is the amount of interest owed to the plaintiff on overdue benefits (include only interest not already paid by the defendant)? $_____.

Defendant requested the following verdict form, which the circuit court concluded was more applicable to the evidence presented at trial, and thus gave it to the jury:

We, the jury, make the following answers to the questions submitted by the Court:

ALLOWABLE EXPENSES

(Allowable expenses consist of all reasonable charges for reasonably necessary products, services, and accommodations for the plaintiff's care, recovery, or rehabilitation.)

**QUESTION NO. 1:** Beginning in October, 2011 through May 31, 2014 is the daytime hourly rate that has been paid by Home-Owners for attendant care services being provided to and for the benefit of Thomas Middleton reasonable?

A**.** Answer: ___(yes or no)

B. If your answer is "yes", go on to Question No. 2. If your answer is "no", what is the reasonable daytime hourly rate for the attendant care services being provided to and for the benefit of Thomas Middleton?

$_____.

**QUESTION NO. 2:** Beginning in October, 2011 through May 31, 2014 is the nighttime hourly rate that has been paid by Home-Owners for attendant care services being provided to and for the benefit of Thomas Middleton reasonable?

A. Answer: ___(yes or no)

B. If your answer is "yes", go on to Question No. 3. If your answer is "no", what is the reasonable nighttime hourly rate for the attendant care services being provided to and for the benefit of Thomas Middleton.

$_____.

INTEREST

(Payment for an expense or loss is overdue if it is not paid within 30 days after the defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss became overdue.)

**QUESTION NO. 3:** Was payment for any of the expenses or losses to which the plaintiff was entitled overdue?

A. Answer: ___(yes or no)

B. If your answer is "yes," what is the amount of interest owed to the plaintiff on overdue benefits (include only interest not already paid by the defendant)?

$_____

The standard jury form, MI Civ JI 67.01 sets forth the allowable expenses and interest inquiry as set forth by plaintiff, but also addressed benefits that were not at issue, such as work loss, replacement service expenses, and survivor's loss that both parties had omitted from their respective verdict forms. The use note accompanying the jury verdict form provides, in pertinent part:

> Omit any questions that are not at issue, such as whether the injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle, and any benefits that are not claimed by the plaintiff.
>
> *This Special Verdict Form may have to be modified where there are* questions involving coordination of benefits, governmental setoffs, or *other issues arising under the no-fault statutes that are not specifically addressed by the format set forth.* [Emphasis added.]

MCR 2.515 governs special verdicts and provides, in relevant part:

> (A) Use of Special Verdicts; Form. The court may require the jury to return a special verdict in the form of a written finding on each issue of fact, rather than a general verdict. If a special verdict is required, the court shall, in advance of argument and in the absence of the jury, advise the attorneys of this fact and, on the record or in writing, settle the form of the verdict. The court may submit to the jury:
>
> (1) written questions that may be answered categorically and briefly;
>
> (2) written forms of the several special findings that might properly be made under the pleadings and evidence; or
>
> (3) the issues by another method, and require the written findings it deems most appropriate.
>
> The court shall give to the jury the necessary explanation and instruction concerning the matter submitted to enable the jury to make its findings on each issue.

A general verdict form does not delineate the facts, the law, or the application of the law to the facts. *Sahr v Bierd*, 354 Mich 353, 364; 92 NW2d 467 (1958). Conversely,

> [t]he special verdict form compels detailed consideration. But above all it enables the public, the parties and the court to see what the jury really has done. The general verdict is either all wrong or all right, because it is an inseparable and inscrutable unit. A single error completely destroys it. But the special verdict enables errors to be localized so that the sound portions of the verdict may be saved and only the unsound portions be subject to redetermination through a new trial. [*Id*. at 365 (citation omitted).]

A special verdict form is not warranted when the case is not so complex that there would be a necessity to submit special findings of fact. *Danaher v Partridge Creek Country Club*, 116 Mich App 305, 320; 323 NW2d 376 (1982).

Here, the parties submitted competing verdict forms. Plaintiff's form mirrored the language of the jury verdict form contained in the civil jury instructions. However, defendant's proposed form was narrowly focused on whether the rates already provided were reasonable. Pursuant to MCR 2.515 and *In re Portus*, 142 Mich App at 803-804, the trial court had the discretion to provide a special verdict form to the jury. Although a close call due to the narrow questions contained in the special verdict form, we cannot conclude that the trial court abused its discretion in using that form at the original trial. Defendant's modification merely acknowledged that there existed separate day and nighttime rates. It is possible that the language contained in the special verdict form addressing the different rates reminded the jury of this fact and allowed the jury to make its award in the bifurcated way rates had been determined.

Because we are vacating the award and remanding for a new trial as specified in this opinion, we need not address plaintiff's final argument that the trial court erred in denying her request for a new trial on the basis that the jury's verdict was contrary to the great weight of the evidence.

Affirmed in part, reversed in part, and remanded for a new trial consistent with this opinion. No costs, neither party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan